**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **JOHN DECLUE,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:03CV145MLM |
| ) | |
| **AL LUEBBERS** ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner John DeCLue ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 4. Respondent Al Luebbers filed a Response to Order to Show Cause together with Exhibits. Doc. 15. Petitioner is currently incarcerated at the Farmington Correctional Center. As such, Al Luebbers as the Superintendent of that facility is the properly named Respondent. Petitioner filed Suggestions in Support of Petition. Doc. 19. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

**I.
BACKGROUND**

Petitioner was charged by indictment as follows: Count I, Petitioner and George Thompson committed the class A felony of murder in the first degree in violation of Mo. Rev. Stat. § 556.020, in that on December 8, 1995, in the City of St. Louis, after deliberation, they knowingly killed Thomas Tyner by shooting him; Count II, Petitioner and George Thompson committed the class A felony of armed criminal action, in violation of Mo. Rev. Stat. § 569.020, in that on December 8, 1995, in the City of St. Louis, they committed the felony of murder first degree charged in Count I

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

by, with, and through the use, assistance and aid of a deadly weapon; Count III, Petitioner and George Thompson committed the class A felony of robbery in the first degree, in violation of Mo. Rev. Stat. § 571.015, in that on December 8, 1995, in the City of St. Louis, they forcibly stole money and a gun in the possession of Thomas Tyner, and in the course thereof they displayed what appeared to be a deadly weapon; and Count IV, Petitioner and George Thompson committed the class A felony of armed criminal action, in violation of Mo. Rev. Stat. § 571.015, in that on December 8, 1995, in the City of St. Louis, they committed the felony of robbery first degree charged in Count III by, with, and through the use, assistance and aid of a deadly weapon. Resp. Ex. B at 7.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[1]

> On December 8, 1995, fourteen-year-old George Thompson (Thompson) was at his cousin Tina Thompson's house at 6925 Pennsylvania in the City of St. Louis. Tammy Stewart and her children also lived with Tina Thompson. On that day, Defendant was also present at the home because Tammy Stewart was his girlfriend. At about 3:30 p.m., Defendant approached Thompson and asked Thompson if he would help him "rob and shoot a cab driver." Thompson agreed to help Defendant. Defendant then went to a neighborhood pharmacy and called for a cab to pick him up at 6807 Virginia. Defendant gave a false name. While Defendant and Thompson were waiting for the cab, Defendant showed Thompson his gun in his left coat pocket. When the cab arrived, Thompson and Defendant got into the back of the cab. Defendant sat directly behind the cab driver. Defendant asked the driver to take them to an address on Oregon Street in the City of St. Louis.

---

[1] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003)). The law is clear that factual findings by state trial and appellate courts shall be presumed to be correct unless the federal court concludes that the state court findings are an unreasonable application of the facts in light of the evidence presented. See id. Additionally, the Eighth Circuit has held that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377 (8th Cir. 1988); Brown v. Lockhart, 781 F.2d 654, 658 (8th Cir. 1986). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

When the cab stopped on Oregon, Defendant pulled his gun and put it against the back of the cab driver's head. Defendant ordered the driver to hand over his money. The driver tossed his money into the back seat and Thompson put it in his pocket. Defendant then told the cab driver to drive. When they pulled into a bank parking lot, Defendant ordered the driver to pull into the alley because it was too crowded on the lot. Defendant then ordered the driver to hand over his wallet, which he did. The driver begged Defendant not to kill him. At that time, Defendant fired three shots, striking the cab driver in the back of the head two times at point blank range. Defendant then jumped out of the car and pulled the cab driver's body out of the cab, dumping it into the alley. Defendant and Thompson then drove away in the cab.

At this time, Defendant saw a gun laying on the front seat. The gun apparently belonged to the cab driver. Defendant told Thompson to look for the shell casings, but Thompson only found two of the casings. Thompson gave those casings to Defendant, who threw them away in a dumpster. Thompson and Defendant then left the cab and ran. Thompson ran to his cousin's house on 6927 Pennsylvania. When he arrived, he saw Defendant in the basement. Three days later, Defendant gave the murder weapon and the cab driver's gun to his cousin Phillip Stewart and his aunt Lela Huntley. An autopsy of the cab driver revealed he suffered two gunshot wounds to the back of his head, which resulted from being shot while the muzzle of the gun was up against his head. As a result of these injuries, the cab driver died.

Resp. Ex. E at 2-3.

On June 25, 1997, after a trial, the jury convicted Petitioner of all four counts as charged. The trial court found Petitioner to be a prior offender and sentenced him to the following consecutive terms of imprisonment: (1) life without parole for first degree murder; (2) thirty years for first degree robbery; and (3) ten years each for the two counts of armed criminal action.

Petitioner filed a direct appeal of the judgment against him. Resp. Ex. C. On August 11, 1998, the Missouri appellate court issued an Order affirming the judgment of the trial court. Resp. Ex. E. Petitioner filed a post-conviction relief motion pursuant to Rule 29.15. Resp. Ex. F at 4-9. The motion court appointed counsel and an amended post-conviction relief motion was filed. Resp. Ex. G at 1-227. Petitioner filed an appeal of the motion court's denial of his post-conviction relief motion in which he raised the following issues: (1) Petitioner was denied effective assistance of

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

counsel because his trial counsel failed to present evidence that Petitioner suffered diminished capacity which prevented him from forming an intent more culpable than recklessness, and (2) Petitioner was denied effective assistance of counsel because his counsel failed to present evidence at trial that Petitioner was not capable of voluntarily, knowingly, and intelligently waiving his rights and making a statement to police. Resp. Ex. K. The Missouri appellate court denied Petitioner's appeal by Order dated March 5, 2002. Resp. Ex. M.

On February 13, 2003, Petitioner filed his § 2254 Petition in the matter under consideration in which he raises the following issues:

> **(1)** Petitioner was denied effective assistance of counsel because his counsel failed to present evidence at trial that Petitioner was not capable of voluntarily, knowingly, and intelligently waiving his rights and making a statement to police.
>
> **(2)** Petitioner was denied effective assistance of counsel because his trial counsel failed to present evidence that Petitioner suffered diminished capacity which prevented him from forming an intent more culpable than recklessness.

Doc. 4 at 6-13.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). Petitioner's § 2254 petition was received by this court on June 2, 1999, and, therefore, the AEDPA standards apply to his petition for writ of habeas corpus.

In Williams v. Taylor, 529 U.S. 363, 412-13 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "Rather the application [by the state-court] must also be unreasonable." Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." Id. at 407. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, as long as the state court's decision is not contrary to such law. See Early v. Packer, 537 U.S. 3, 8 (2002). For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

court decision must "identif[y] the correct governing legal rule from [Supreme Court] cases but unreasonably appl[y] it to the facts of the particular state prisoner's case" or "unreasonably [extend] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably [refuse] to extend that principle to a new context where it should apply." Id. The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts [including the Eighth Circuit] have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's decision "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record. See Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. See Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 123 S.Ct. 1397 (Feb. 28, 2005). The court held in Brown that:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999). The court further held in Brown that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits." Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, "because there is no apparent state-court adjudication to which" this standard can be applied. Brown v. Luebbers, 344 F.3d 770, 785 (8th Cir. 2003), rev'd on other grounds, 2004

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

WL 1315842 at *2 (8th Cir. June 15, 2004) (citing Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review.")).

## III.
## EXHAUSTION ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. See id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id.

A state prisoner can overcome procedural default if he or she can demonstrate cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice. See Coleman, 501 U.S. at 750-51. See also Battle v. Delo, 19F.3d 1547, 1552 (8th Cir. 1997). "A habeas petitioner who wishes to have a procedurally defaulted claim [considered] on its merits now 'must show by clear and convincing evidence that but for a constitutional error, no

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 650 (8th Cir. 1992 ) (citing Sawyer v. Whitley, 505 U.S. 333 (1992)). Actual innocence is required to meet the miscarriage-of-justice exception to the procedural requirements described above. See Sweet, 125 F.3d at 1152 (citing Schlep v. Delo, 513 U.S. 298, 316 (1995)). Indeed, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Id. (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. See Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted). In O'Sullivan v. Boerckel, 526 U.S. 838 (1999), the United States Supreme Court determined that to satisfy the exhaustion requirement of 28 U.S.C.§ 2254(b)(1), a state prisoner must present his or her claims to a state's supreme court, even where review by that supreme court is discretionary and not mandatory. The Eighth Circuit has held that the exhaustion doctrine, as stated in O'Sullivan, should not be applied in pre-O'Sullivan cases, stating, "we conclude that justice dictates a different outcome . . . because the State has not consistently asserted the failure to seek a discretionary transfer is a bar to federal habeas relief." Dixon v. Dormire, 263 F.3d 774, 781 (8th Cir. 2001). See also Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002); Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (citing Ford v. Georgia, 498 U.S. 411, 423-24 (1991) ("[O]nly a 'firmly established and regularly followed state practice' will bar federal court review.")).

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The court finds that Petitioner in the matter under consideration has exhausted his State remedies and that he has fairly presented his claims to the appropriate State courts. Additionally, the court finds that he has timely filed his § 2254 Petition.

## IV.
## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." See id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Strickland, 466 U.S. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> [P]resenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...
>
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has articulated an exception to the rule articulated in Strickland that to prevail on an ineffective assistance of counsel claim a habeas petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Mickens v. Taylor, 535 U.S. 162, 166 (2002) (citing Stickland, 466 U.S. at 694). The Court held in Mickens that a habeas petitioner need not show the probable effect of the alleged ineffective assistance of counsel on the outcome of his trial "where assistance of counsel has been denied entirely or during a critical stage of the proceeding." Id.

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

# V.
# DISCUSSION

**Ground 1 - Petitioner was denied effective assistance of counsel because his counsel failed to present evidence at trial that Petitioner was not capable of voluntarily, knowingly, an intelligently waiving his rights and making a statement to police:**

In support of Ground 1 Petitioner argues that although his trial counsel filed a motion to suppress his statements to police she did not "make any allegations that Petitioner's statements were involuntary or the product of an invalid waiver of Petitioner's rights due to any mental disease or defect." Doc. 19 at 8. Petitioner further argues that his counsel did not litigate the motion to suppress, did not object to the admission of Petitioner's statement and presented no evidence on the issue. Id. Petitioner further states that at the post-conviction hearing his trial counsel "admitted that when she retained Dr. Armour she did not ask him to evaluate [P]etitioner's ability to waive his rights after he was arrested." Petitioner continues to state that "Dr. Armour confirmed that he had been retained solely for the competency and responsibility issues." Id. Petitioner argues that he was prejudiced by his attorney's performance in this regard because "[h]ad counsel investigated she would have discovered that [P]etitioner was not capable of executing a voluntary, knowing, and intelligent waiver of his rights." Id. at 9.

The motion court summarized the testimony at Petitioner's post-conviction relief evidentiary hearing as follows:

> Movant's trial attorney [ ] testified at the evidentiary hearing in this case. [She] testified that she had asked the trial court to order a psychiatric examination of movant because the first time she spoke with him he had banged his head against the wall and had been restrained by a sheriff's deputy. During her visits to him at the City jail she did not observe any other behavior on his part that caused her any concern. During the course of the evaluation of movant [the attorney] became aware of movant's psychiatric background, including a prior finding in an earlier case that he was competent to stand trial on assault second charges. Following the evaluation, by Dr. Michael Armour, [the attorney] spoke with Dr. Armour and was advised that movant was a very good actor, that he could not include in a report that movant was not competent, and Dr. Armour was then asked not to prepare a report. [The

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> attorney] said Dr. Armour's final, expert opinion was that movant was competent and
> was malingering. Thereafter, during movant's trial, [the attorney] believed, based on
> her conversations with him, that movant understood what she was trying to do
> strategically, understood the defense theory, and he showed no signs of significant
> problems. [The attorney] found no inconsistencies between his trial testimony and
> what he had told her previously about the case. His testimony was also consistent
> with that his co-defendant, other than with regard to culpability for murder in the first
> degree.
>
> Movant testified at trial. He provided a detailed account of the events culminating
> in the robbery and the murder. Movant's testimony was responsive to the questions
> asked of him, and he showed both an ability to understand the questions and a
> recollection of the events surrounding the commission of the crimes. Among other
> things, he said he set out with George Thompson to rob a cab driver to get money to
> buy Christmas presents, that the had not planned on killing anyone, and that he had
> a gun for the commission of the robbery. Movant was also responsive during cross-
> examination, during which he explained that he had been concerned about fingerprints
> on the shell casings, that he had looked for other incriminating evidence, that he knew
> the gun was loaded when he took it along, and that he had been planning the robbery
> for some time.

Resp. Ex. F at 30-31.

The motion court noted that Dr. Armour conducted three interviews of Petitioner; that he reviewed the police report and medical records from St. Louis State Hospital; that he spoke with Dr. Joe Gray, a psychologist employed at the City jail and workhouse; that he tentatively concluded at the end of the first interview that Petitioner was not competent to stand trial; that following the second interview he did not believe that Petitioner qualified for an insanity defense; that he consulted Dr. Gavin who had done an evaluation of Petitioner in the prior assault case; that Dr. Gavin advised Dr. Armour that Petitioner was a malingerer although he suffered a psychiatric disorder; and that after the third interview of Petitioner Dr. Armour advised Petitioner's attorney that he thought Petitioner was competent and was malingering, that he planned the robbery and shooting, and that he was functioning at a level higher than he let on. Resp. Ex. F at 31-32. The motion court further considered the deposition testimony of Dr. A.E. Daniel who had evaluated Petitioner in May 1999; that Dr. Daniel "acknowledged that both before and after the crime, [Petitioner] did a lot of things

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that could lead one to think that he knew what he was doing"; and that Dr. Daniel concluded that Petitioner could not have the intent to commit an act greater than manslaughter and that he was not competent to stand trial. Id. at 33-34.

Upon considering the issue raised in Ground 1, the motion court held as follows:

> To prevail on a claim that counsel was ineffective for failing to seek a pretrial psychiatric examination, the movant must show the existence of a factual basis indicating that his mental condition was questionable which should have caused his attorney to initiate an independent investigation of movant's mental state. Such an investigation is not indicated where a defendant has the present ability to consult with his attorney with rationality and to understand the proceedings against him. (citations omitted). Counsel is not ineffective for failing to request a second exam where the first exam found movant to be free of mental disease or defect at the time of the crime and that movant was competent to stand trial unless movant can show that a second evaluation would have produced a different result and that movant's counsel was personally familiar with the movant and his alleged problem. Putney v. State, 785 S.W.2d 562 (Mo. App. 1990).
>
> The court finds that [Petitioner's counsel] was not ineffective for failing to further investigate movant's competence and responsibility for the crime in light of what she had been told by Dr. Armour. The Court further notes the nature of the crimes, movant's ability to testify at trial about the underlying events, understand the questions posed to him, and respond appropriately during cross-examination. The Court note that Dr. Daniel, who evaluated movant five years after the crimes and two years after the trial, raised questions about movant's mental state and competence. However, [the attorney's] competence must be judged based on the information provided to her by Dr. Armour as well on her own observations of and communications with movant.

Resp. Ex. F at 34-35.

Upon considering the issue raised by Petitioner in Ground 1 the Missouri appellate court stated as follows:

> Movant's second contention on appeal is that the motion court clearly erred when it denied his motion for postconviction relief because trial counsel failed to present evidence at trial that Movant was not capable of voluntarily, knowingly, and intelligently waiving his rights when he made his statement to police. Movant claims that his statements might have been suppressed and the outcome of his trial would have been different.

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The trial court concluded that this claim was without merit because [Petitioner's trial attorney] had a reasonable basis for believing that Movant was competent. We agree and do not find any clear error in this determination.

Resp. Ex. M at 4-5.

As stated above, pursuant to Williams this court must consider federal law applicable to Petitioner's claim in Ground 1 that he was denied effective assistance of counsel because his trial counsel failed to present evidence at trial that he was not capable of voluntarily, knowingly, and intelligently waiving his rights and making a statement to the police. On point is King v. Kemna, 266 F.3d 816 (8th Cir. 2002), cert. denied, 535 U.S. 934 (2002), in which the Eighth Circuit held, in relevant part, that:[2]

> Defense counsel has the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691, 104 S.Ct. 2052. In making this assessment, we look to the facts of the particular case, "viewed as of the time of counsel's conduct." Id. at 690.

Id. at 823.

In King, a psychologist had concluded that the petitioner did not suffer from a mental illness or defect as defined in Mo. Rev. Stat. 552.010. The Eighth Circuit concluded that "although the psychologist's] report did not specifically address the question of diminished capacity, a competent Missouri criminal defense attorney reading the report would know that it ruled out a diminished capacity partial defense. Id. at 824. The court stated that for this reasons and "giving [the petitioner's

---

[2] Before this court and previously before the Missouri appellate court Petitioner cited King, 226 F.3d 981 (8th Cir. 2000), in support of the issue raised in Ground 2. The Missouri appellate court noted that in King the Eighth Circuit issued an en banc decision, King, 266 F.3d 816 (8th Cir. 2001), ultimately finding that the habeas petitioner did not receive ineffective assistance of counsel because his trial counsel failed to pursue a diminished capacity defense.

15

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

attorney's] judgment the "heavy measure of deference" to which it is entitled under Strickland, we conclude the record fully supports the state courts' determination that [the petitioner's attorney's] representation did not fall below an objective standard of reasonableness. Id. at 824-25. Upon addressing the prejudice prong of the Strickland test for ineffective assistance of counsel the Eighth Circuit further held in King that "counsel's failure to ferret out and pursue legally insufficient evidence of diminished capacity did not prejudice [the petitioner's] defense." Id. at 825.

The standard articulated in King as quoted above is precisely the standard applied by the motion court upon consideration of the issue raised in Petitioner's Ground 1 which reasoning was adopted by the Missouri appellate court. The court finds, therefore, that the decision of the Missouri appellate court in regard to Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. at 690-91; King, 266 F.3d at 816. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

**Ground 2 - Petitioner was denied effective assistance of counsel because his trial counsel failed to present evidence that Petitioner suffered diminished capacity which prevented him from forming an intent more culpable than recklessness:**

In support of Ground 2 Petitioner argues that his trial attorney was ineffective for failing to properly investigate and present evidence that Petitioner could not form the requisite intent to commit murder in the first degree. Petitioner further states that his trial counsel contacted Dr. Michael Armour to have Petitioner examined "with an eye towards determining whether [P]etitioner was fit to stand trial or was responsible for the murder. She did not have Dr. Armour render an opinion about whether [P]etitioner had the capacity to deliberate upon the killing." Doc. 19 at 10-11. Petitioner also states that his attorney testified that Dr. Armour told her that Petitioner was "a very good actor"; that Petitioner was "either very ill or real evil"; and that Petitioner was competent to stand trial. Id. at 11. Petitioner further states that Dr. Armour testified in his deposition that he did not think

16

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Petitioner qualified for a not guilty by reason of insanity defense due to the facts that Petitioner used a "fake name when he called the cab company"; that Petitioner took the victim to a remote location; that Petitioner ensured an escape venue; and that Petitioner felt sick to his stomach afterwards. Id. at 12-13.

Upon addressing the issue of Ground 2 as to whether Petitioner's counsel was ineffective for failing to present evidence at trial that Petitioner suffered from diminished capacity which prevented him from forming an intent more culpable than reckless the Missouri appellate court stated as follows:[3]

> The record reflects that Movant's trial counsel [ ] hired Dr. Michael Armour ("Armour") to evaluate Movant after he had ah outburst during her first meeting with him at which he hit his head against the wall and required restraint. [Petitioner's attorney] asked Armour to assess Movant's competency and responsibility. Armour later testified he would have considered it an implied request that he evaluate Movant either for a viable not guilty by reason of insanity or diminished capacity defense.
>
> Armour interviewed Movant three times and reviewed several of his medical records. Initially, he concluded that Movant was not competent to stand trial but that he was responsible for his actions at the time of the murder. However, he ultimately concluded that Movant was malingering and was therefore competent. He reached this conclusion based on his successive interviews with Movant and the fact that Movant's behavior during the crime demonstrated an awareness of what he was doing. He also reviewed a report by Dr. Garvin ("Garvin"), who initially found him incompetent in another, unrelated case, but who later found him competent, concluding that he was malingering. Included in her report were notations that medical personnel had observed Movant drastically change and improve his demeanor when speaking with family and friends on the phone. After the phone calls ended, Movant would then return to the "same halting, immature, seemingly dull manner" that he consistently displayed during his hospitalization.
>
> As a result of Armour's conclusion, [Petitioner's attorney] asked him not to prepare a written report. She determined that because Armour could not support a defense involving Movant's mental fitness, she decided not to pursue any such defense for fear it might backfire. She also testified at the hearing that after Movant's initial outburst at their first meeting, which was a year-and-a-half before his trial, he

---

[3] The court notes that the facts applicable to both Petitioner's Grounds 1 and 2 are the same. The Missouri appellate court articulated the relevant facts in regard to Ground 2.

17

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> subsequently behaved normally, appeared to understand what was happening and stated that he understood the proceedings.
>
> Dr. Daniel ("Daniel"), whose deposition testimony was admitted at the evidentiary hearing, opined that Movant was not competent to stand trial. Movant points out that Daniel had access to more of his medical records than Armour. However, Daniel did not review Garvin's report, which determined that Movant was malingering. He only interviewed Movant once, whereas Armour interviewed Movant on three different occasions. Finally, Daniel evaluated Movant five years after the crime and two years after the trial.
>
> [Petitioner's attorney's] conduct must be based on the information provided to her by Armour as well as her own observations of and communications with Movant. Strickland, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). We conclude that because Armour felt Movant was malingering, it was reasonable for [Petitioner's attorney] to decide not to purse any mental defect defense and we do not see any clear error in the trial court's findings and conclusions. See Lyons v. State, 39 S.W.3d 32, 39 (Mo. banc 2001) (counsel's decision was one of strategy made after a thorough investigation and was therefore "virtually unchallengable"). Point denied.

Resp. Ex. M at 3-4.

Federal law provides that counsel must exercise reasonable diligence to produce exculpatory evidence. See Kenley, 937 F.2d 1304, 1298 (8th Cir. 1991). The decision whether to introduce evidence may be a matter of trial strategy. See Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002), cert. denied, 538 U.S. 951 (2003). "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Id. at 1556 (citation omitted). In Petitioner's case even though Dr. Armour's conclusions may have been contradicted by Dr. Daniel after Petitioner's trial, such contradiction do not, under federal law, render the performance of Petitioner's counsel ineffective as counsel's performance must not be judged in hindsight. See King, 266 F.3d at 816. Moreover, in addressing the issue of Ground 2 the Missouri appellate court specifically considered federal law as set forth in Strickland and concluded that in light of the facts and law that provides that counsel's performance must not be judged in hindsight, the

18

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

performance of Petitioner's counsel was reasonable. As such, the Missouri appellate court's findings in regard to the issue of Petitioner's Ground 2 is not contrary to and is a reasonable application of federal law. See Strickland, 466 U.S. at 689; Hall, 296 F.3d at 685; King, 266 F.3d at 816.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Grounds 1 and 2 in his § 2254 Petition without merit and that the Petition should be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**; [Doc. 4]

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability is **DENIED**.

/s/Mary Ann L.Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  8th  day of  June, 2005.

19

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

PDF created with FinePrint pdfFactory trial version www.pdffactory.com